UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X        Docket No.
TATIANA BONILLA,

                       Plaintiff,

      -against-                              COMPLAINT
                                                  AND JURY TRIAL
                                                  DEMAND

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, and the NEW YORK CITY
DEPARTMENT OF EDUCATION.

                     Defendants.
--------------------------------------------------------------------X


        PLAINTIFF, TATIANA BONILLA, by her attorneys, PACIFIC JUSTICE INSTITUTE,

INC., through local counsel, April Forbes, Esquire, hereby complains of the DEFENDANTS, THE

CITY OF NEW YORK (hereinafter "the City"), THE NEW YORK CITY DEPARTMENT OF

HEALTH AND MENTAL HYGIENE (hereinafter "the Department of Health"), and THE NEW

YORK CITY DEPARTMENT OF EDUCATION (hereinafter "the DOE"), upon information and

belief, as follows:

## <u>INTRODUCTION & NATURE OF THE CASE:</u>

1.   Beginning in 2021, the City implemented a series of orders mandating vaccination of

     "almost all" individuals working in the municipality, all of which, are ripe for challenge as

     being in violation of the First Amendment of the United States Constitution. This particular

     Complaint is for religious discrimination on behalf of a former employee of the DOE who,

     like countless other individuals, was subjected to the City's mandatory COVID-19

     vaccination requirement contained in the Order dated August 24, 2021 - as rescinded and

restated on September 15, 2021 and then amended on September 28, 2021 – and applicable to all employees of the DOE ("the Order"). Initially, the Order did not include any exemptions, but, as will be addressed more fully below, any individual subject to the Order, could submit a request for either a medical or religious exemption from vaccination, even though, upon information and belief, it was predetermined that most requests for exemptions would be outright denied as an undue hardship for the DOE, hence, no real religious exemption being made available.

2.   Moreover, the Order carved out exceptions for various categories of individuals – such as bus drivers who were not subject to the mandatory vaccination requirement but, like all other school employees throughout the remainder of New York State, had daily interaction with students and were allowed to either get vaccinated or test weekly. Similarly, the Order carved out exceptions for universal prekindergarten workers who just so happened to be assigned to work with children outside of a DOE building.

3.   Further, the designated Citywide Panel ("the CWP"), which served as an administrative appellate agency that entertained denials of religious and medical exemptions of individuals subject to the Order, was not truly an independent administrative appellate body, did not adhere to all relevant and applicable laws, evaluated appeals with a level of unconstitutional scrutiny that required individuals to give a description of their beliefs that meet the standards of secular logic, and, notwithstanding a New York federal court determining that the process utilized by the CWP in connection with a request for a religious exemption was likely "**constitutionally infirm**", since that determination, yet another court in the State of New York has concluded that a decision of the CWP in the

denial of a request for a religious exemption by another DOE teacher is arbitrary and capricious.

4. The Plaintiff is one of the individuals who was willing to accept an accommodation, even if this meant weekly testing and mandatory mask wearing, but was precariously placed in untenable position by the City and its agents simply because she chose to stand by her religious convictions which are protected by the United States Constitution.

5. Therefore, the Plaintiff asserts that the City's Order is facially flawed and thus the Defendants violated the Free Exercise Clause of the First Amendment of the United States Constitution; and that the Order is also, as applied, in violation of the Free Exercise Clause of the First Amendment of the United States Constitution.

6. Furthermore, the Plaintiff, was subjected to the City's Order, while other similarly situated employees working with children in nonpublic schools also located in the City, were given less restrictive alternatives to mandatory vaccination - such as weekly testing, social distancing, and masking. Therefore, the Plaintiff also asserts that the Defendants, both the City and the Commissioner of Health, have violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, in addition to the New York State Constitution's Equal Protection of Laws, Article 1, § 11; and the Plaintiff seeks injunctive relief, along with compensatory damages against the Defendants.

**PARTIES:**

7. The Plaintiff, Ms. Bonilla, currently resides in the State of North Carolina, and was employed by the DOE until on or about March of 2022, during which time she resided in the State of New York.

8.  Upon information and belief, Defendant, the City, is a municipal corporation constituting the local municipal government of the population residing in New York, Bronx, Queens, Kings and Richmond Counties in New York State.

9.  Upon information and belief, Defendant, the Department of Health, is responsible for public health in the City.

10. Upon information and belief, Defendant, the DOE, is a corporate body created by Article 52 and/or Article 52-A of the New York State Education Law that manages and controls the educational affairs in New York State; and, upon information and belief, is the "local educational agency" as defined by 34 C.F.R. § 300.28.

## JURISDICTION AND VENUE:

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and presents federal questions, pursuant to 28 U.S.C. § 1343(a)(3).

12. Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because the relevant events have occurred in this jurisdictional district and division. The Defendants' principal place of business(es) is/are in this district.

13. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-02, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

14. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the state related claim based on violation of Article 1, § 11 of the New York State Constitution.

15. The Plaintiff filed a Notice of Claim with the City on or about May of 2022 and no resolution has been reached between the parties.

## **RELEVANT BACKGROUND INFORMATION**:

16. The Plaintiff, Tatiana Bonilla, was employed from September of 2016 and continuing until March of 2022 as a Special Education Teacher for the DOE, assigned to work at the Jeffrey Rapport School for Career Development X 754 in the Bronx, New York, with an impeccable work record.

17. Upon information and belief, on or about March 25, 2020, the former Commissioner of Health declared the existence of a public health emergency within the City to address COVID-19.

18. Upon information and belief, in March of 2020, the DOE closed all schools in its system, pivoting to a program of system-wide remote instruction, with school personnel and students participating in school activities through remote means.

19. Ms. Bonilla worked from, on or about March of 2020 and continuing through August of 2020, remotely.

20. However, in September of 2020 and continuing through June of 2021, which was still during the height of the pandemic, Ms. Bonilla was one of the City's teachers who actually worked in person at the school while others continued to work, upon information and belief, remotely due to receiving an accommodation.

21. Upon information and belief, on or about May of 2021, the former mayor of the City, Bill DiBlasio, and/or the former chancellor of the DOE announced a full-return to in-person learning for the DOE students and staff for the 2021-2022 school year and that, consistent with the full-return to in-person learning, there would be no fully remote staff positions.

## **Mandatory COVID-19 Vaccination Order**

22. On August 24, 2021, the former Commissioner of Health issued the Order mandating that the DOE employees, contractors, visitors and "others" provide proof of at least one dose of a COVID-19 vaccination by September 27, 2021, and said deadline was subsequently extended until October 1, 2021.

23. The Order indicates that "the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science" and "a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety".

24. The Order indicates the following regarding the Center for Disease Control (hereinafter referred to as "the CDC"):

> the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; …
>
> the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic….

25. The CDC, however, determined that vaccinations or injections available for COVID-19 do not prevent transmission, infection, or reinfection in those who receive them. The CDC Director publicly stated that the injections do not prevent infection or transmission of SARS-CoV-2, which is the virus that has been identified by various public health agencies as causing the disease known as COVID-19. "[*W]hat [the vaccines] can't do anymore is prevent transmission*" citing from ECF No. 2-2, Madeline Holcomb, Fully Vaccinated People Who Get a CoVID-19 Breakthrough Infection Transmit the Virus, CDC Chief Says,

CNN HEALTH (August 6, 2021)[1]; *see also* the article entitled Resurgence of SARS-CoV-2 Infection in a Highly Vaccinated Health System Workforce, the New England Journal of Medicine, 2021; 385:1330-1332 (September 30, 2021).

26. The CDC acknowledged that the "vaccinated" and "unvaccinated" are equally likely to spread the virus. ECF No. 2-3, Brown CM, Vostok J, Johnson H, et al. Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021.[2]

27. This Order, which relied heavily on determinations of the CDC which the CDC itself acknowledged is not supported essentially by the weight of the evidence, drastically impacted the lives of all subject to the Order who, as a result of the Order, no longer have the option to undergo weekly testing, but now the DOE employees, including the Plaintiff, would be terminated if they did not receive at least one dose of the vaccination by the imposed deadline.

**Exemptions from the Mandatory Vaccination Order**

28. While the initial Order(s) did not include any exemptions for medical conditions or religious belief, as a result of an arbitration involving the DOE and the United Federation of Teachers (hereinafter "the UFT"), exemptions were added to the mandatory Order (the arbitration "Award"), along with the establishment of a process or mechanism for seeking an exemption and the requisite criteria to be relied upon in connection with the consideration of a request for an exemption.

---

[1] https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html (last visited March 1, 2022).
[2] MMWR MORB MORTAL WKLY REP 2021; 70:1059-1062,
https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid =mm7031e2_w.

29. This process included the initial request for exemption being submitted to the DOE which, in turn, would render a determination. However, employees denied at the first stage could appeal to an independent arbitrator. The Award established criteria for making determinations on appeals requesting religious exemptions that included whether the employee had a letter from clergy, whether the leader of the employee's religion had spoken publicly in favor of the vaccine, and whether the employee was a member of a recognized and established religious organization.

30. Further, if an exemption were granted from vaccination, the individual exempted from vaccination would be permitted to remain on payroll, but not be permitted to enter a school building while unvaccinated, and may be assigned to work outside a school building to perform academic or administrative functions.

### Unreasonable Options for Individuals Whose Requests for Exemption from the Order were Denied and the Impact on the Plaintiff

31. For those individuals whose request for an exemption was denied and also refused to provide proof of vaccination with one of the available COVID-19 vaccines, the following four major deadlines applied:

> • October 1, 2021: Employees who were not in compliance as of this date were placed on unpaid leave with health insurance effective the next business day.
>
> • October 29, 2021: Through this date, employees could elect to resign their positions in exchange for special benefits and waiving any challenge to their separations.
>
> • November 30, 2021: Through this date, employees could opt-in to an extended leave without pay ("LWOP") program, with health insurance, allowing them to stay at home through September 5, 2022. Employees would retain the option of complying with the vaccination requirement and then returning to work within a week or two. Employees who opt into the extended leave option will also

waive any challenge to their separation if they do not return to work by the end of the leave period.

• December 1, 2021: Employees who did not select either the resignation or extended leave options would remain on LWOP, with health insurance, until December 1, 2021, at which point the DOE could begin to unilaterally terminate their employment.

32. On or about September 16, 2021, Ms. Bonilla submitted a request for a religious exemption from the City's mandatory vaccination Order due to her sincerely held religious beliefs, which included a detailed explanation of how the mandatory vaccination requirement conflicts with her religious beliefs.

33. As an alternative to vaccination, Ms. Bonilla requested that she be allowed to wear a mask and test as previously was the case before any mandatory vaccination Order was implemented by the City for public school personnel.

34. On September 17, 2021, just one day later after the initial request for a religious exemption from mandatory vaccination was submitted, the request was denied, and, thereafter, Ms. Bonilla's timely appealed the initial denial and said appeal of the initial denial was also denied.

35. Ms. Bonilla did not resign from her job and refused to waive any legal rights to challenge either the Order or the DOE.

36. As such, on October 4, 2021, Ms. Bonilla was placed on LWOP status which prevented the Plaintiff from using any annual leave, cumulative absence reserve ("CAR") or sick time.

37. Moreover, the Plaintiff was notified that the DOE could seek to unilaterally terminate her from employment beginning December 1, 2021.

38. Ms. Bonilla did receive unemployment insurance benefits for a very brief period of time during the latter portion of 2021; however, due to a concern that the unemployment insurance benefits may have to be repaid, she elected to no longer weekly certify in order to continue receiving unemployment benefits.

39. Since being placed on LWOP status, Ms. Bonilla has not been allowed to work in the City as a Special Education Teacher.

### The DOE's Standard Explanation for Denying Exemptions from the Order and the Impact on the Plaintiff

40. Upon information and belief, no real, meaningful explanation was provided to Ms. Bonilla in connection with the initial religious exemption request and any appeal(s) filed in connection with the denial of the initial request.

41. However, as to the DOE's post-hoc rationale for denying Ms. Bonilla's request for a religious exemption, in connection with a subsequent complaint filed by Ms. Bonilla with the New York State Human Rights Division, the DOE took the position that the Plaintiff could not perform the essential functions of her job if the request for a religious exemption was granted since, per the City's Order mandating vaccination for DOE staff and employees, no unvaccinated individuals could work in-person at the City's public schools, therefore allegedly creating an undue hardship inasmuch that someone else would allegedly need to be hired to perform Ms. Bonilla's job duties.

42. Upon information and belief, it was already predetermined that any religious exemptions would be denied based on a claimed undue hardship by the DOE even before submission of any requests, including Ms. Bonilla's request for a religious accommodation.

43. More specifically, counsel for the DOE indicated as follows in response to a complaint filed by the Plaintiff with the NYS Human Rights Division:

"Given the full return to in-person learning in DOE schools and the Vaccine Mandate, DOE has **consistently maintained** that granting exemptions to employees who work in schools or similar settings generally poses an undue hardship for the agency because these employees are unable to perform the essential functions of their positions: serving students attending school in-person. Assigning unvaccinated staff to work at alternative assignments amounts to creating assignments that did not previously exist, for employees to do work that is generally not a priority, while simultaneously hiring and training staff to cover essential functions in schools. **While there may be a small number of cases warranting a different approach, as a general matter this is an undue hardship**. "

44. Also, the DOE indicated as follows: "Allowing such employees to remain in school settings unvaccinated, even with other safeguards like masking and testing, would present an unacceptable risk to schoolchildren, staff, and others".

45. Upon information and belief, the DOE did not rely upon any evidence of past school outbreaks that resulted from unvaccinated personnel resulting in any claimed undue hardship of allowing an unvaccinated employee like Plaintiff to have been rooted solely in hypothetical hyperbole and spurious speculation.

46. Upon information and belief, the unacceptable risk which the DOE claims would be present in allowing unvaccinated employees to remain in school settings was not and still is not supported by the available statistical data pertaining to COVID-19.

47. As indicated above, the CDC acknowledged that vaccinations or injections available for COVID-19 do not prevent transmission, infection, or reinfection in those who receive them. The CDC Director publicly stated that the injections do not prevent infection or transmission of SARS-CoV-2, which is the virus that has been identified by various public health agencies as causing the disease known as COVID-19. "[***W]hat [the vaccines] can't do anymore is prevent transmission***" citing from ECF No. 2-2, Madeline Holcomb, Fully Vaccinated People Who Get a CoVID-19 Breakthrough Infection Transmit the Virus, CDC

Chief Says, CNN HEALTH (August 6, 2021)[3]; *see also* the article entitled Resurgence of SARS-CoV-2 Infection in a Highly Vaccinated Health System Workforce, the New England Journal of Medicine, 2021; 385:1330-1332 (September 30, 2021).[4]

48. The CDC acknowledged that the "vaccinated" and "unvaccinated" are equally likely to spread the virus. ECF No. 2-3, Brown CM, Vostok J, Johnson H, et al. Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021.[5]

49. Moreover, New York State, in its aggressive efforts designed to curb the spread of COVID-19 throughout the state, nevertheless provided public school staff/employees the option of either getting vaccinated or, alternatively, getting tested weekly.

50. Furthermore, the claimed unacceptable risk which the DOE relied upon which would be purportedly created by allowing unvaccinated employees to remain in school settings still nevertheless did not hinder or prevent, upon information and belief, unvaccinated delivery drivers from entering the City's public schools per the mandatory vaccination Order and/or hinder or prevent unvaccinated City school bus drivers from performing their jobs without mandatory vaccination, which included the bus drivers having daily contact with students.

**Appeals In General Before the CWP and the Outcome of the Plaintiff's Appeal**

51. On or around November 19, 2021, Ms. Bonilla was notified that an appeal of the prior denial for a religious exemption could be made with the CWP.

---

[3] https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html (last visited March 1, 2022).
[4] https://www.nejm.org/doi/full/10.1056/NEJMc2112981.
[5] MMWR MORB MORTAL WKLY REP 2021; 70:1059-1062,
https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid =mm7031e2_w.

52. Upon information and belief, the CWP was an administrative body authorized or charged with entertaining appeals, including appeals involving the DOE.

53. The CWP was comprised of representatives of the Commission on Human Rights, the Department of Citywide Administrative Services, and the Office of the Corporation Counsel.

54. The determinations of the CWP were to be made in accordance with the standards imposed by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law.

55. However, in actuality, the CWP relied heavily and primarily upon Title VII's lesser standard pertaining to undue hardship (i.e. a de minimus standard). Crucially, this Title VII standard does not meet the substantially stricter standards imposed by the New York City Human Rights Law and the New York State Human Rights Law which maintain a heightened standard (i.e. a significant hardship) in connection with the determination of whether or not an employer has **established** that it would be an undue burden in granting a religious accommodation.

56. Pursuant to N.Y. Executive Law, Article 15, Human Rights Law, §296 (10), which pertains to Unlawful discriminatory practices, an "undue hardship" shall mean an accommodation requiring significant expense or difficulty … Factors to be considered in determining whether the accommodation constitutes an undue economic hardship shall include, but not be limited to:

> (i) the identifiable cost of the accommodation, including the costs of loss of productivity and of retaining or hiring employees or transferring employees form one facility to another, in relation to the size and operating cost of the employer;

(ii) the number of individuals who will need the particular accommodation to a sincerely held religious observance or practice; and

(iii) for an employer with multiple facilities, the degree to which the geographic separateness or administrative or fiscal relationship of the facilities will make the accommodation more difficulty or expensive.

57. The CWP, in connection with determining whether or not an employer has **established** that it would be an undue burden in granting a religious accommodation, did **not** require any **actual evidence** from an employer supporting that there would be an undue hardship.

58. Subsequent to a November 28, 2021 decision of the Second Circuit in the lawsuits entitled *Kane, et al. v. DiBlasio, et al.* (21-2678-cv) and *Keil v. City of New York, et al.* (21-2711-cv), concluding that the process undertaken in evaluating appeals pertaining to requests for religious exemptions from the mandatory vaccination Order was "likely constitutionally infirm", Ms. Bonilla, as with many other of the DOE employees, were given the opportunity for a fresh look de novo review of their prior appeal with the CWP.

59. The Second Circuit's reference to the CWP appeal's review process likely being "constitutionally infirm" in the *Kane, et al. v. DiBlasio, et al.* (21-2678-cv) and *Keil v. City of New York, et al.* (21-2711-cv) lawsuits, was actually the very process that an arbitrator had implemented during 2021 in response to the UFT's challenge of the initial mandatory vaccination Order which did not contain any exemptions whatsoever.

60. And even subsequent to the Second Circuit's reference to the CWP appeal's review process likely being "constitutionally infirm" in the *Kane, et al. v. DiBlasio, et al.* (21-2678-cv) and *Keil v. City of New York, et al.* (21-2711-cv) lawsuits, a New York State Court in the lawsuit entitled *Elizabeth Loiacono vs. the Board of Education, et al.*, Index No.: 154875/2022 (New York County Supreme Court) has held that the CWP's March 28, 2022

decision in denying the religious exemption request made by an employee of the DOE was "arbitrary and capricious" as further evidence that the appellate review of the CWP is yet and still likely constitutionally infirm and/or suspect.

61. Upon information and belief, the CWP did not have any formalized written procedure or protocol in connection with the appeals relating to the review of prior denials for either religious or medical exemptions.

62. Upon information and belief, representatives of the CWP were unclear on the actual legal standard or analysis which should be implemented as it relates to the CWP's appellate review of religious and medical exemption denials by lower-level City administrative agencies.

63. Upon information and belief, at least one of the CWP representatives was uncertain regarding whether an individual's objection to the COVID-19 vaccine due to the vaccine containing fetal stem cells or being tested with fetal stem cells constituted a sincerely held religious belief or whether the request for a religious exemption should be denied.

64. Upon information and belief, the CWP concluded that an individual asserting in connection with an appeal for a religious exemption from vaccination that fetal stem cells were in any of the available COVID-19 vaccines, was not a religious belief, even if the belief was based on information supplied by a spiritual director or clergy.

65. Upon information and belief, at least two members of the CWP were involved in the denials of exemption requests made by City employees to the City's mandatory vaccination orders at the lower-level City administrative agencies.

66. In connection with the CWP's second review of Ms. Bonilla's request for a religious exemption from the mandatory vaccination Order, on or about January 7, 2022, the CWP

forwarded to the Plaintiff which consisted of an itemized request for the submission of the

following additional information:

> 1. Whether you have previously taken any vaccinations.

> 2. If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other substances you consider foreign/impermissible or that violate your religious belief.

> 3. If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.

> 4. Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

67. Upon information and belief, the four itemized requests unconstitutionally require the DOE

employee seeking a religious exemption from the Order to give a description for his or her

beliefs that meets the standards of secular logic, while the very nature of faith is that it

transcends logic.

68. In response to the four itemized requests which essentially are an

individualized assessment, the failure of the person of faith to provide an explanation that

is persuasive to the State reviewer will result in a finding that the believer is unorthodox or

does not live accordance with her religious confession.

69. Moreover, upon information and belief, the additional information sought by the CWP was

actually already in the possession of the appellate review agency since the responses were

included within the initial religious exemption request that Ms. Bonilla submitted to the DOE during September of 2021.

70. However, in good faith, on or about January 13, 2022, Ms. Bonilla provided yet another detailed explanation outlining her sincerely held religious beliefs that conflicted with the COVID-19 mandatory vaccination Order, including answering again the additional inquiries raised by the CWP.

71. On or about February 15, 2022, Ms. Bonilla received notice that the CWP denied the appeal regarding the request for exemption from vaccination due to her sincerely held religious beliefs, under the guise that the "DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning".

72. However, as referenced above in this complaint, the CWP did not require any actual evidence from an employer supporting that there would be an undue hardship as such this strongly begs the question as to how the DOE demonstrated that there would in truth be an undue hardship.

73. Indeed, the CWP's appellate review conducted in connection with requests for religious exemptions placed a much heavier burden on the individual, including Ms. Bonilla, who sought exemption from the mandatory vaccination Order to establish that the individual has a sincerely held religious belief but then, simultaneously, the CWP simply took an employer's word that granting a religious exemption will result in an undue hardship for the employer.

74. Further, the CWP's denial sent to Ms. Bonilla on or about February 15, 2022 included the following drastic notice:

If you remain non-compliant with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff, have not already opted to separate or extend your LWOP, and do not opt within 7 calendar days of the notice of the citywide panel's denial of your appeal to extend your LWOP or return from LWOP status, you will be terminated from service with the NYCDOE. Please note that your health insurance coverage through the City will also cease upon termination.

**Official Notice of Termination and Efforts by the Plaintiff to Maintain Employment**

75. On March 17, 2022 Ms. Bonilla received notice that her employment with the DOE was officially terminated due to:

> (1) the failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff; and
>
> (2) refusal to choose to extend leave without pay. Ms. Bonilla was also advised within the notice of termination that health insurance coverage with NYC would cease effective immediately.

76. On or about March 25, 2002, Ms. Bonilla, requested a hearing pursuant to Education Law Section 3020a.

77. On or about April 11, 2022, Ms. Bonilla appealed the decision of the UFT not to proceed with a Step 2 grievance; and, on or about June 14, 2022, the UFT notified Ms. Bonilla that her appeal of the prior denial requesting that the union proceed with a Step 2 grievance was denied.

78. Ms. Bonilla has never wavered in her sincerely held religious beliefs which directly conflict with the mandatory vaccination Order and, as a result of the denial of Ms. Bonilla's request for a religious exemption, she has been unnecessarily and drastically impacted including, but not limited to: the loss of employment, the loss of income, the loss of health benefits, the loss of annual leave, the loss of CAR, the loss of sick time, and the loss of her apartment,

along with being forced to relocate out of state, and now making significantly less that what she was accustom to earning as a City school teacher.

## Carve Out Exceptions from the Mandatory Vaccination Order

79. Although the mandatory vaccination requirement for the DOE staff and employees was allegedly designed to curb the spread of COVID-19, the City's school bus drivers who daily transported the students to and from schools, were not subject (and still are not subject) to the mandatory vaccination Order.

80. As was the case for the remainder of public school workers throughout New York State, City bus drivers had the option of either providing proof of vaccination from COVID-19 or, alternatively, undergoing mandatory weekly testing.

81. More specifically, while the New York State government implemented an order, 10 N.Y.C.R.R. §2.61, that required all healthcare workers to get vaccinated in order to maintain employment, less any approved medical exemptions, the government did not impose such a stringent regulation on any of the public schools throughout New York State.

82. Instead, the state government implemented a much less restrictive order which allowed employees of schools with the option of mandatory weekly testing in place and stead of mandatory vaccination.

83. Moreover, the City's mandatory vaccination Order pertaining to the DOE employees and staff actually excludes universal prekindergarten workers who, upon information and belief, would have daily prolonged interaction with children, but just so happen to be assigned to work with children outside of any DOE building.

84. Further, the Order which mandates vaccination for the DOE employees and staff did not (and does not) apply to any individuals making deliveries or pickups at the public schools located in the City.

### **Preferential Treatment for Nonpublic School Employees**

85. The Commissioner of Health issued a separate and distinct mandatory vaccination Order applicable to nonpublic schools located within the City that contains medical and religious exemptions.

86. This Order for employees of nonpublic schools in the City, just like the Order for public school employees which applies to Ms. Bonilla, was based on the same purpose, i.e. to curb the spread of the virus.

87. More specifically, the Order for nonpublic schools implemented by the City and applicable to nonpublic school employees working in the City, as similar to the Order for public schools implemented by the City and applicable to public school employees working in the City, indicates that "the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science" and "a system of vaccination for individuals working in" nonpublic schools "will potentially save lives, protect public health, and promote public safety".

88. As similar to the City's mandatory vaccination Order for employees and staff of public schools in the City, the order for employees and staff of nonpublic schools in the City, states the following regarding the CDC:

> the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for

reasons of age, health, or other conditions cannot themselves be vaccinated; …

the CDC has recommended that school teachers and staff be "vaccinated as soon as possible" because vaccination is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic….

89. As indicated above, in paragraphs 25, 26, 47, and 48, the CDC acknowledged that the COVID-19 vaccine did not (and does not) prevent the infection and transmission of the virus.

90. Both the mandatory vaccination Order pertaining to public school employees working in the City, which the Plaintiff was subjected to, and the order pertaining to nonpublic school employees working in the City, require proof of vaccination by a date certain.

91. However, the consequences for not getting vaccinated for a public school employee, such as Ms. Bonilla, were quite drastically harsher than the consequences for a nonpublic school employee who did not receive the COVID-19 vaccination.

92. To that end, Ms. Bonilla, and, upon information and belief, numerous other public school employees of the DOE subject to the City's mandatory Order, if proof of vaccination was not provided, the employee was placed on unpaid leave of absence and eventually terminated.

93. While employees of nonpublic schools in the City which were subject to the City's Order for nonpublic schools, if proof of vaccination was not provided, the City suggested reasonable accommodations for the employee including alternative less restrictive options such as weekly testing, social distancing and masking.

**The City's Concession Regarding What is a Reasonable Accommodation Undermines the Mandatory Vaccination Order for the DOE Employees Including the Plaintiff**

94. The City actually acknowledges that alternatives to vaccination, such as weekly testing, masking and social distancing, can actually constitute **reasonable accommodations** within schools located in the City.

95. The informational sheet issued by the City pertaining to nonpublic school indicates, in relevant part, as follows:

> How do I determine reasonable accommodations?
>
> If a school determines that it will provide a staff member with a reasonable accommodation, the school must also determine the form of the accommodation based on the individual circumstances and how the school provides other accommodations. Examples of accommodations include assigning the staff member to work in areas where children are not present; requiring the staff member to undergo more frequent testing, including regular at-home testing; and requiring the staff member to wear two face coverings or a higher-grade face covering and maintain at least 6 feet of distance from others in the school.

96. This astonishing admission by the City that a "reasonable accommodation" can actually include what the Plaintiff requested from the DOE as an alternative to mandatory vaccination, i.e. testing and masking, coupled with the CDC's acknowledgement that the COVID-19 vaccines do not prevent infection or transmission of the disease, entirely undercuts the City's implementation of such an extreme Order, through its agent(s) and/or representatives(s) for the DOE employees which, unfortunately for the Plaintiff, resulted in her termination since she could not agree to obtaining a vaccination which directly conflicts with her sincerely held religious beliefs.

97. This admission by the City regarding reasonable accommodations including testing and masking is in line with the State of New York's implementation of an order regarding the use of testing and masking in schools throughout the remainder of the state.

**CAUSE OF ACTION:**

**<u>AS AND FOR A FIRST CAUSE OF ACTION</u>**
**AGAINST THE DEFENDANTS**
**BASED ON 42 U.S.C. SECTION 1983**
**RELIGION CLAUSES**
**First Amendment to the U.S. Constitution**

98. The Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

99. The right to free exercise of religion is a right protected and guaranteed by the First Amendment of the U.S. Constitution.

100. The liberties under the First Amendment apply to the states and their political subdivisions through the Fourteenth Amendment.

101. The actions of all of the Defendants have been, and continue to be, done under the color of law.

102. The Plaintiff has a sincerely held religious belief that compels her to refuse the COVID-19 vaccine.

103. The Defendants have engaged in indirect coercion and penalties on the Plaintiff for the exercise of her religion.

104. In doing so, the Defendants have excluded the Plaintiff, as a religious observer, from continued employment.

105. The vaccination requirement forced the Plaintiff to choose between receiving the COVID-19 vaccine in violation of her sincerely held religious beliefs or be fired, thus imposing a substantial burden on the Plaintiff and interfering with, and depriving her of, the enjoyment of the religious liberties guaranteed by the First Amendment to the U.S. Constitution, as made applicable to the states through the Fourteenth Amendment.

## Strict Scrutiny Applies

106. Laws that burden religion are subject to strict scrutiny under the Free Exercise Clause particularly when they are not neutral or generally applicable.

107. A law is not generally applicable if there are carve outs for secular exemptions when religious exemptions are denied, as occurs in this Order which includes several carve outs, such as making an exception for school bus drivers and, therefore, none of the City's school bus drivers who transported children to and from City public schools were subject to the Order.

108. Bus drivers for the City, upon information and belief, would, during the week, have daily interaction with students being transported to and from City public schools.

109. The Order is also not generally applicable inasmuch that it carves out exceptions for universal prekindergarten workers who were assigned to work outside of any DOE building, but, nevertheless, upon information and belief, still would have daily prolonged interaction with students.

110. The Order is also not generally applicable since individuals who make deliveries to the City's public schools and/or pick up deliveries from the City's public schools were not subject to the Order.

111. The blatant hypocrisy in the Order is revealed inasmuch that it is utterly harsh, in its application since, unless an exemption is granted, those subject to the Order who are employees of the DOE will either be forced to get vaccinated or left without a job, while an individual privileged to work at a non-public school in the City had additional available options beyond getting vaccinated or facing unemployment due to the refusal to get vaccinated.

112. This City-imposed caste system relative to the options or the lack thereof relative to mandatory vaccination from COVID-19 depending upon whether you worked in a public school as opposed to a private school is glaringly present inasmuch that private or non-public schools had access to reasonable accommodations such as requiring the staff member to undergo more frequent testing, the wearing of a mask, maintaining at least 6 feet of distance from others in the school and/or allowing the staff member to work in areas where children are not present.

113. Moreover, the Order treats more harshly those individuals, including the Plaintiff, who express sincerely held religious beliefs, make a request for a religious exemption, but, by nature of the work that they perform, cannot work remotely.

114. To that end, the Plaintiff, just like the case would be for any other teacher who would be unable to work remotely due to the City, through its agent(s) and/or representative(s), determining that there would be no remote learning option for the 2021-2022 school year and thus only in-person learning for the school year, would be automatically excluded or disqualified from receiving any real meaningful consideration for an exemption when making a request for an exemption before either the DOE and/or the CWP.

115. More specifically, the DOE has "consistently maintained" the position that it would be an undue hardship for any DOE employees or staff to obtain an exemption, resulting in an outright denial for a majority of individuals seeking a request for exemption whether due to religious or medical reasons from the mandatory vaccination Order.

116. The DOE's "consistently maintained" position, at its extreme application, essentially renders all religious exemptions requests being outright denied, and, hence, the inclusion of a religious exemption request to the City's mandatory vaccination Order by way of the arbitrator's Award is, for those who cannot work remotely, no real religious exemption option being available at all.

117. Ultimately, it is simply a waste of time for a DOE employee to submit a request for a religious exemption as the DOE already knows that there will be no good faith effort to accommodate the individual from mandatory COVID-19 vaccination due to a sincerely held religious belief(s) that conflicts with vaccination.

118. The lack of good faith is not only evident in the DOE's actions, but, also evident with the CWP inasmuch that even when appealing the DOE's denial of a religious exemption request before the CWP, this appellate administrative body simply took the word of the employer that there would be an undue hardship if an exemption was granted and this was *without* requiring any actual evidence that there is in truth an undue hardship – although the employer bears the responsibility to establish an undue hardship.

119. The CWP was empowered to take a fresh look at the prior religious exemption requests which were denied and that purportedly fresh look was devoid of any substantive review of the legitimacy of the employer's reliance upon a claimed undue hardship and was also

devoid of consideration of all applicable laws that the administrative body was subject to as the CWP evaluated all appeals based on the EEOC's lesser de minimus standard of an undue hardship.

120. To further undermine the legitimacy of the appellate review process, at least 2 members of the CWP panel were involved in lower-level administrative process for the review of requests by City employees for exemptions from the City's mandatory vaccination orders.

121. Subsequent to the Second Circuit in *Kane, et al. v. DiBlasio, et al.* (21-2678-cv) and *Keil v. City of New York, et al.* (21-2711-cv) lawsuits raising issue with the CWP's process for reviewing religious exemptions, nevertheless, the CWP sent to the Plaintiff a questionnaire consisting of four itemized requests which unconstitutionally required Ms. Bonilla to give a description of her beliefs that meets the standards of secular logic, while the very nature of faith is that it transcends logic.

122. Indeed, in responding to the four itemized requests, the failure of the person of faith to provide an explanation that is persuasive to the State reviewer will result in a finding that the believer is unorthodox or does not live accordance with her religious confession.

123. Admissions by the CWP supporting that an individual, who makes a request for a religious exemption, but indicates that fetal stem cells were in any of the available COVID-19 vaccines was not a religious belief, even if the information came from a spiritual director or clergy, support that the failure of a person of faith to provide an explanation that is persuasive to the governmental reviewer will result in a finding that the believer's religious belief is essentially not sincere.

124. Essentially, the CWP imposes requirements that stand as hostile to the religious beliefs of the Plaintiff and acts in a manner that passes judgment upon or presuppose the illegitimacy of religious beliefs and practices. Therefore, the protocol used is not neutral.

125. The protocol used involves individualized assessments and thus are not generally applicable.

126. The Defendants, through the CWP, has engaged in indirect coercion and penalties on the Plaintiff for the exercise of her religion. In doing so, the Defendants are excluding the Plaintiff as a religious observer from continued employment.

127. Ultimately, the CWP appellate review process is riddled with uncertainties which is an unacceptable review process given the potentially dire impact that the decisions of the appellate review board had/has on the lives of individuals, such as the Plaintiff who lost her job.

128. It cannot be denied as evident by a 2022 New York State Court decision rendered in *Elizabeth Loiacono vs. the Board of Education, et al.*, Index No.: 154875/20 that the CWP appellate review process is still likely constitutionally infirm or suspect.

129. Both the Order and the CWP are creations of the City that have both detrimentally impacted, upon information and belief, countless lives, including the Plaintiff's life which was wholly upended.

### **The Order Is Not Narrowly Tailored To Achieve Its Purpose**

130. Given that the Order is not generally applicable, under a strict scrutiny analysis, the Order must be narrowly tailored to achieve the alleged purpose of the Order in the first instance which was allegedly to protect the health and safety of staff and students.

131. However, upon information and belief, the available data regarding COVID-19 supported that vaccination does not stop infection and/or transmission of COVID-19.

132. The CDC acknowledged that vaccinations or injections available for COVID-19 do not prevent transmission, infection, or reinfection in those who receive them. The CDC Director publicly stated that the injections do not prevent infection or transmission of SARS-CoV-2, which is the virus that has been identified by various public health agencies as causing the disease known as COVID-19. "[*W]hat [the vaccines] can't do anymore is prevent transmission*" citing from ECF No. 2-2, Madeline Holcomb, Fully Vaccinated People Who Get a CoVID-19 Breakthrough Infection Transmit the Virus, CDC Chief Says, CNN HEALTH (August 6, 2021)[6]; *see also* the article entitled Resurgence of SARS-CoV-2 Infection in a Highly Vaccinated Health System Workforce, the New England Journal of Medicine, 2021; 385:1330-1332 (September 30, 2021).[7]

133. The CDC acknowledged that the "vaccinated" and "unvaccinated" are equally likely to spread the virus. ECF No. 2-3, Brown CM, Vostok J, Johnson H, et al. Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021.[8]

---

[6] https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html (last visited March 1, 2022).
[7] https://www.nejm.org/doi/full/10.1056/NEJMc2112981.
[8] MMWR MORB MORTAL WKLY REP 2021; 70:1059-1062,
https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid =mm7031e2_w.

134. Moreover, there are alternative and less restrictive means, other than mandatory vaccination, that could have been implemented by the City for DOE employees.

135. To that end, for school employees throughout the remainder of New York State, the less restrict and alternative means implemented by the government was weekly testing if no proof of vaccination.

136. Indeed, the Plaintiff, as an alternative, suggested a similar course of action as imposed by New York State for all schools as an accommodation due to her religious beliefs against vaccination, and that included weekly testing along with masking.

137. Had the Plaintiff been an employee of a non-public school in the City as opposed to an employee of one of the City's public schools, she would have been afforded greater and less restrictive alternatives to mandatory vaccination which would have complemented her sincerely held religious beliefs.

138. However, there was no willingness by the City and/or any of its representatives to consider any alternative, less restrictive means and the drastic detrimental outcome for the Plaintiff was the unnecessary loss of her employment as a tenured teacher for the DOE.

139. For the reasons outlined above, the Order, on its face and as applied, violates the First Amendment Free Exercise Clause of the United States Constitution since it is not narrowly tailored to promote a compelling interest.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST THE DEFENDANTS**
**BASED ON 42 U.S.C. SECTION 1983**
**CITY OF NEW YORK AND THE NEW YORK CITY**
**DEPARTMENT OF HEALTH AND MENTAL HYGIENE**
**Violation of the Equal Protection Clause of the**
**Fourteenth Amendment to the U.S. Constitution**

140. The Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint and incorporate those allegations herein by reference.

141. The mandate imposed on the Plaintiff interferes with the fundamental right to exercise one's sincerely held religious belief.

142. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires that every regulation be at a minimum rationally related to a legitimate governmental interest.

143. The Defendants cannot rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

144. The mandatory vaccine Order applicable to DOE employees in the City's public schools required vaccination with no option for weekly testing, masking and/or social distancing as an alternative to vaccination, but, instead, if not vaccinated or granted an exemption from vaccination, then the DOE employee, as was the case with the Plaintiff, faced the drastic consequence of termination.

145. The claimed purpose for the mandatory vaccine Order was to curtail the spread of COVID-19 throughout the City.

146. However, the mandatory vaccine order pertaining to employees of private schools or nonpublic schools in the City required the employees to get vaccinated, but, if an employee did not get vaccinated, then the employee would not necessarily face the drastic

consequence of termination, but, instead said employee, as recommended by the City, should be afforded the option of weekly testing, social distancing, and masking.

147. As similar to the mandatory vaccination Order for the DOE employees working in the City's public schools, the claimed purpose for the vaccination order pertaining to employees in nonpublic or private schools was to curtail the spread of COVID-19 throughout the City.

148. Given that both the public and private school employees subjected to the City's respective orders work in the same city, with the claimed purpose of both orders designed to curtail the spread of COVID-19 throughout the City, to recommend that employees of private or nonpublic schools be offered less restrictive and essentially more favorable alternatives to mandatory vaccination while harshly terminating employees of public schools, such as the Plaintiff, who refuse to get vaccinated due to their sincerely held religious belief(s), is irrational and arbitrary.

149. The arbitrary distinction between public school employees and private school employees is not rationally related to the City's legitimate interest in curtailing the spread of the disease.

150. Both the private or nonpublic school employees and the public school employees, such as the Plaintiff, should have been allowed the option of weekly testing, masking and, if warranted, social distancing as an alternative to vaccination as was the case in the remaining portion of New York State.

151. The information relief upon by the City in both orders pertaining to public and private school employees working in the City rely upon information provided by the CDC which

the CDC has essentially acknowledged is not in fact the case. (Refer to paragraphs 25-26 and 47-48 above).

152. There is no rationale justification of subjecting the Plaintiff to the extreme consequence of termination from employment from the DOE when she could not agree to vaccination due to her sincerely held religious beliefs and, had she been an employee of a private or nonpublic school in the City, a reasonable accommodation, pursuant to the City's recommendations to private or nonpublic schools, would have allowed the Plaintiff to continue working with mandatory weekly testing and masking.

153. Indeed, the allowance of the weekly testing and masking, along with social distancing as a reasonable accommodation for employees of private or nonpublic schools in the City only emphasizes the fact that such alternative less restrictive options designed to prevent the transmission and spread of COVID-19 are reasonable accommodations.

154. This allowance of weekly testing and masking by the City is an acknowledgement that such alternatives to mandatory COVID-19 vaccination are reasonable accommodations.

155. Reasonable accommodations, while required by law, were not provided by the City, upon information and belief, to those employees of the DOE subjected to the Order for DOE staff and employees who opposed vaccination due to their sincerely held religious belief(s), including the Plaintiff.

156. Unreasonable accommodations which essentially resulted in an individual, such as the Plaintiff, who could not agree to vaccination due to her sincerely held religious beliefs, not being given the option of remote work and being denied an exemption from mandatory vaccination based on a claimed unsupported undue hardship asserted by the DOE with no

concrete evidence establishing the same, but instead resulting in the Plaintiff being terminated from employment as a teacher in the City is neither rational nor reasonable.

157. The City's actions towards the Plaintiff were arbitrary at best and the blatant hypocrisy in the Order that Ms. Bonilla was subjected to is revealed inasmuch that it is utterly harsh, in its application since, unless an exemption is granted, those subject to the Order who are employees of the DOE will either be forced to get vaccinated or left without a job, while an individual privileged to work at a non-public school in the City had additional available options beyond getting vaccinated or facing unemployment.

158. This City-imposed caste system relative to the options or the lack thereof relative to mandatory vaccination from COVID-19 depending upon whether you worked in a public school as opposed to a private school is glaringly present inasmuch that private or non-public schools had access to reasonable accommodations such as requiring the staff member to undergo more frequent testing, the wearing of a mask, maintaining at least 6 feet of distance from others in the school and/or allowing the staff member to work in areas where children are not present.

159. The City's refusal to allow reasonable accommodations for the DOE employees who maintained a sincerely held religious belief(s) conflicting with getting any COVID-19 vaccination, such as the Plaintiff, while allowing the very same options as acceptable or reasonable accommodations for employees of private or nonpublic schools in the City is unreasonable, irrational and arbitrary.

160. The City's discriminatory practice in allowing and/or recommending the option of testing and masking as an alternative to mandatory vaccination for employees for nonpublic or

private school employees in the City, but not allowing a similar option of testing and

masking as an alternative to mandatory vaccination for employees of the DOE is in

violation of the Plaintiff's civil rights and liberties.

161. For the reasons outlined above, the Order, on its face and as applied, violates the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution since it

is not rationally related to a legitimate governmental interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST THE DEFENDANTS CITY OF NEW YORK
### AND THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE
### Violation of the New York State Equal Protection of Laws
### New York State Constitution

162. The Plaintiff repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this Complaint and incorporate those allegations herein by reference.

163. The mandate imposed on the Plaintiff interferes with the civil rights to exercise one's

sincerely held religious belief.

164. Article 1 §11 of the New York State Constitution prohibits discrimination in connection

with an individual's civil rights, including that "No person shall be denied the equal

protection of the laws of this state or any subdivision thereof. No person shall, because of

race, color, creed or religion, be subjected to any discrimination in his or her civil rights by

any other person or by any firm, corporation, or institution, or by the state or any agency

or subdivision of the state."

165. The mandatory vaccine Order applicable to DOE employees in the City's public schools

required vaccination with no option for weekly testing, masking and/or social distancing

as an alternative to vaccination, but, instead, if not vaccinated or granted an exemption

from vaccination, then the DOE employee, as was the case with the Plaintiff, faced the drastic consequence of termination.

166. The claimed purpose for the mandatory vaccine Order was to curtail the spread of COVID-19 throughout the City.

167. However, the mandatory vaccine order pertaining to employees of private schools or nonpublic schools in the City required the employees to get vaccinated, but, if an employee did not get vaccinated, then the employee would not necessarily face the drastic consequence of termination, but, instead said employee would be afforded the option of weekly testing, social distancing, and masking.

168. As similar to the mandatory vaccination Order for the DOE employees working in the City's public schools, the claimed purpose for the vaccination order pertaining to employees in nonpublic or private schools was to curtail the spread of COVID-19 throughout the City.

169. Given that both the public and private school employees subjected to the City's respective orders work in the same city, with the claimed purpose of both orders designed to curtail the spread of COVID-19 throughout the City, to either recommend or allow employees of private or nonpublic schools be afforded less restrictive and essentially more favorable alternatives to mandatory vaccination while harshly terminating employees of public schools, such as the Plaintiff, who refuse to get vaccinated due to their sincerely held religious belief(s), is irrational and arbitrary.

170. The arbitrary distinction between public school employees and private school employees is not rationally related to the City's legitimate interest in curtailing the spread of the disease.

171. Both the private or nonpublic school employees and the public school employees, such as the Plaintiff, should have been allowed the option of weekly testing, masking and, if warranted, social distancing as an alternative to vaccination as was the case in the remaining portion of New York State.

172. The information relief upon by the City in both orders pertaining to public and private school employees working in the City rely upon information provided by the CDC which the CDC has essentially acknowledged is not in fact the case. (Refer to paragraphs 46 and 47 above).

173. There is no rationale justification of subjecting the Plaintiff to the extreme consequence of termination from employment from the DOE when she could not agree to vaccination due to her sincerely held religious beliefs and, had she been an employee of a private or nonpublic school in the City, a reasonable accommodation, pursuant to the City's position on what constitutes a reasonable accommodation in the private or nonpublic schools located in the City, would have allowed the Plaintiff to continue working with mandatory weekly testing and masking.

174. Indeed, the allowance of the weekly testing and masking, along with social distancing as a reasonable accommodation for employees of private or nonpublic schools in the City only emphasizes the fact that such alternative less restrictive options designed to prevent the transmission and spread of COVID-19 are reasonable accommodations.

175. This allowance of weekly testing and masking by the City is an acknowledgement that such alternatives to mandatory COVID-19 vaccination are reasonable accommodations.

176. Reasonable accommodations, while required by law, were not provided by the City, upon information and belief, to those individuals who were subject to the Order for DOE staff and employees but opposed vaccination due to their sincerely held religious belief(s), including the Plaintiff.

177. Unreasonable accommodations which essentially resulted in an individual, such as the Plaintiff, who could not agree to vaccination due to her sincerely held religious beliefs, not being given the option of remote work and being denied an exemption from mandatory vaccination based on a claimed unsupported undue hardship asserted by the DOE with no concrete evidence establishing the same, but instead resulting in the Plaintiff being terminated from employment as a teacher in the City is neither rational nor reasonable.

178. The City's actions towards the Plaintiff were arbitrary at best and the blatant hypocrisy in the Order which Ms. Bonilla was subjected to is revealed inasmuch that it is utterly harsh, in its application since, unless an exemption is granted, those subject to the Order who are employees of the DOE will either be forced to get vaccinated or left without a job, while an individual privileged to work at a non-public school in the City had additional available options beyond getting vaccinated or facing unemployment.

179. The City's refusal to allow reasonable accommodations for the DOE employees who maintained a sincerely held religious belief(s) conflicting with getting any COVID-19 vaccination, such as the Plaintiff, while recommending and/or allowing the very same

options as acceptable or reasonable accommodations for employees of private or nonpublic schools in the City is unreasonable, irrational and arbitrary.

180. The City's discriminatory practice in allowing the option of testing and masking as an alternative to mandatory vaccination for employees for nonpublic or private school employees in the City, but not allowing a similar option of testing and masking as an alternative to mandatory vaccination for employees of the DOE is in violation of the Plaintiff's civil rights and liberties.

181. For the reasons outlined above, the Order, on its face and as applied, violates the Equal Protection of Laws of the New York State Constitution since it is not rationally related to a legitimate governmental interest.

## PRAYER FOR RELIEF:

WHEREFORE, the Plaintiff requests that the Court enter judgment in her favor and against the Defendants, for full relief, including the following:

A. Declaratory judgment that the City's mandatory vaccination Order for the DOE employees, staff and all other individuals subjected to the Order violates the Religion Clause of the First Amendment of the United States Constitution;

B. Declaratory judgment that the City's mandatory vaccination Order for the DOE employees, staff and all other individuals subjected to the Order violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

C. Declaratory judgment that the City's mandatory vaccination Order for the DOE employees, staff and all other individuals subjected to the Order violates the Equal Protection of Laws, Article 1, § 11 of the New York State Constitution;

D.  Issuance of an injunction enjoining the City from the continued enforcement of the mandatory vaccination Order for DOE employees, staff and all other individuals subjected to the Order in its current state, but instead the issuance of an injunction mandating the City to allow reasonable accommodations of testing and masking for DOE employees, staff and any other individuals subject to the Order who, due to their sincerely held religious belief(s), cannot be vaccinated;

E.  Issuance of an injunction enjoining the CWP from conducting any further appellate review(s) of any appeals for religious exemptions and the creation of an independent nonpartisan appellate review panel to entertain any appeals for religious exemptions and also to conduct de novo reviews of all prior denials for religious exemptions that the current CWP issued in connection with requests for an exemption from the Order;

F.  An award for actual, consequential, and incidental financial losses, including, but not limited to lost backpay, benefits, and other compensation plus interest;

G.  An award of compensatory damages;

H.  An award of punitive damages;

I.  Restoration of employee benefits, including, but not limited to, medical benefits, pension, and insurance;

J.  Restore annual leave, CAR and sick time;

K.  Attorneys' fees and costs; and

L.  Any and all other appropriate relief to which the Plaintiff may be entitled including all "appropriate relief" within the scope of F.R.C.P. 54(c).

Dated: August 19, 2022

Respectfully Submitted,

*-S-*

_____
April Forbes, Esquire (**Bar #AF0833**)
PACIFIC JUSTICE INSTITUTE, INC.
Counsel for the Plaintiff
350 Northern Boulevard
Suite 324, Box 1061
Albany, New York 12204-1000
(518) 721-8369 (Telephone)
(518) 707-0770 (Facsimile)
aforbes@pji.org (Email)
Counsel for the Plaintiff