UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TATIANA BONILLA,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE, and the NEW YORK CITY
DEPARTMENT OF EDUCATION,

                    Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   12/4/2023
```

22 Civ. 7113 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Tatiana Bonilla, brings this action against the City of New York and several of its departments, alleging that the City's COVID-19 vaccine mandate imposed on Department of Education (the "DOE") employees like herself constitutes religious discrimination under the United States and New York constitutions and various provisions of state and local law. Third Amended Compl. ("TAC") ¶¶ 1–2, ECF No. 40. Defendants move to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 48–50. For the reasons stated below, Defendants' motion is GRANTED.

## BACKGROUND[1]

From September 2016 to March 2022, Bonilla was employed by the DOE as a special education teacher at the J.M. Rapport School for Career Development, X754, in the Bronx, New York. TAC ¶¶ 13–14. Bonilla is a Christian who, "in accord with her religious beliefs, cannot receive any COVID-19 vaccine(s)." *Id.* ¶¶ 270–71; *see* Ex. B at 2, ECF No. 40-2.

In March 2020, to address the COVID-19 pandemic, the DOE closed all of its schools and pivoted to a program of systemwide remote instruction. TAC ¶¶ 15–16. In May 2021, then-Mayor Bill de Blasio and the DOE "announced a full return to in-person learning" for the 2021-2022 school

---

[1] The following facts are taken from the TAC and are presumed true for the purposes of considering the motion to dismiss. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

year. *Id.* ¶ 19. Accordingly, there would be no fully remote DOE staff positions. *Id.*

On August 24, 2021, the New York City Commissioner of Health issued an order (the "Mandate") requiring that DOE employees, contractors, and certain "others"[2] provide proof of at least one dose of a COVID-19 vaccination by September 27, 2021 (later extended to October 1, 2021). *Id.* ¶ 20. The Mandate explained that "the City is committed to safe, in-person learning in all pre-school to grade 12 schools, following public health science," and to creating "a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, [that] will potentially save lives, protect public health, and promote public safety." *Id.* ¶ 21; Ex. A, ECF No. 40-1. The Mandate also cited guidance from the Centers for Disease Control and Prevention ("CDC") stating that "vaccination is an effective tool to prevent the spread of COVID-19" and recommending that schoolteachers and staff be "vaccinated as soon as possible." *Id.* ¶ 22; Ex. A.

In the fall of 2021, following arbitration with the teachers' union, the DOE added several exemptions to the Mandate for medical conditions and religious beliefs. *Id.* ¶¶ 27–28. The additions also established a process for seeking an exemption. *Id.* ¶ 28. First, a DOE employee could submit a request for the DOE's consideration. *Id.* ¶ 29. If it were denied, the decision could be appealed to an independent arbiter. *Id.* The Mandate amendments also laid out the DOE's criteria for evaluating religious exemption requests, including (1) whether the employee had a letter from clergy; (2) whether the leader of the employee's religion had spoken publicly in favor of the vaccine; and (3) whether the employee was a member of a recognized and established religious organization. *Id.* Employees granted exemptions would remain on the DOE's payroll but would not be permitted to

---

[2] Specifically, the Mandate applied to "[a]ll DOE staff, including volunteers, interns, and student teachers"; "City employees" and "DOE/City contractors who work in-person in a DOE school or DOE building"; "[s]taff and contractors of any charter school, [universal pre-kindergarten] located in a DOE building who work in-person." Ex. A at 11, ECF No. 40-1. It excluded DOE students, school bus drivers, delivery workers, and certain charter and universal pre-kindergarten workers not located in DOE buildings. *Id.* at 13.

enter a school building while unvaccinated.  *Id.*  Bonilla alleges that "[a]t least one" special education teacher and one assistant principal employed by the DOE requested and received religious exemptions.  *Id.* ¶¶ 30–33.  Bonilla also alleges that the DOE granted several medical exemptions. *Id.* ¶ 34.

Around September 16, 2021, Bonilla requested a religious exemption, claiming that the COVID-19 vaccination "conflicted with her sincerely held religious beliefs," *id.* ¶ 36, because "aborted fetal stem cells ha[d] been used in the development and testing of the current COVID-19 vaccine," and her "faith teaches that life begins in the womb," Ex. B at 2.  Bonilla also included a letter from the reverend of her church attesting to the sincerity of her faith.  *Id*. at 4.

The DOE denied Bonilla's request the next day.  TAC ¶ 39.  The denial stated that her application "failed to meet the criteria for a religious based application" because "unvaccinated employees cannot work in a school building without posing a direct threat to health and safety" and accommodating her religious belief would pose an "undue hardship."  Ex. C, ECF No. 40-3. Bonilla's appeal of the decision was denied.  TAC ¶ 40.  On October 4, 2021, Bonilla was placed on "leave without pay" status and was informed that, beginning December 1, 2021, the DOE could seek to unilaterally terminate her employment.  *Id.* ¶¶ 42–43.

In November 2021, Bonilla was notified that she could further appeal the denial of her religious exemption request to a citywide panel.[3]  *Id.* ¶¶ 58–60.  Bonilla reiterated her religious objection to the panel, which then requested answers to four additional questions:

> 1. Whether you have previously taken any vaccinations.
>
> 2. If you have stated that you have a personal religious aversion to foreign or other impermissible substances entering your body, please describe this with more clarity, including describing any other commonly used medicines, food/drink and other

---

[3] This second reviewing body was formed after the Second Circuit ordered that other plaintiffs challenging the Mandate "receive fresh consideration of their requests for a religious accommodation by a central citywide panel . . . adher[ing] to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."  *Kane v. De Blasio*, 19 F.4th 152, 176–77 (2d Cir. 2021).

substances you consider foreign/impermissible or that violate your religious belief.

3. If you have stated that you cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine, please provide more information about your stated objection and whether there are other medications or vaccinations that you do not take because of this objection.

4. Any additional occasions you have acted in accordance with the cited belief outside the context of a COVID-19 vaccination, to the extent not previously described in the documentation already submitted.

*Id.* ¶ 75; Ex. E, ECF No. 40-5.  Bonilla answered the additional questions, but her responses are not included in the TAC.  TAC ¶ 78.  The panel denied her appeal, explaining that "it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning."  *Id.* ¶ 79.

The DOE officially fired Bonilla around March 17, 2022, for failing to comply with the Mandate.  *Id* ¶ 83; Ex. F, ECF No. 40-6.

Bonilla commenced this action against Defendants[4] on August 19, 2022, ECF No. 1, and amended her complaint thrice, ECF Nos. 3, 13, 40.  In the TAC, Bonilla brings eleven causes of action under (1) the First and Fourteenth Amendments to the U.S. Constitution; (2) the Free Exercise Clause of the New York State Constitution; (3) the Separation of Powers Clauses of the U.S. and New York State Constitutions; and (4) various provisions of state and local law.  TAC ¶¶ 120–308.

Defendants move to dismiss the TAC under Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 48–50.

---

[4] Although Bonilla named the New York City Department of Health and Mental Hygiene and the New York City Department of Education as defendants, these entities are "non-suable agenc[ies] of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (citing N.Y.C. Charter § 396).  The Court, therefore, treats Bonilla's suit as one against the City of New York.  *See Broecker v. N.Y.C. Dep't of Educ.*, No. 23-655, 2023 WL 7485465, at *1 n.1 (2d Cir. Nov. 13, 2023).

**DISCUSSION**

## I.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*.  On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## II.  Analysis

### A.  Section 1983 Claims

#### 1.    First Amendment (Count I)

Bonilla argues both that the Mandate on its face, and the exemption-request process as applied to her, violate her First Amendment right to freedom of exercise of religion.  TAC ¶¶ 120–155.  Neither argument has merit.

##### a.   Facial Challenge

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion.  U.S. Const. amend. I; *see also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states).

The Clause protects "an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Kane v. De Blasio*, 19 F.4th 152, 163–64 (2d Cir. 2021) (citation omitted).

But this protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990) (citation omitted). A law may not be neutral if "it explicitly singles out a religious practice," or if it "targets religious conduct for distinctive treatment." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (citation omitted). And it is not generally applicable if it either "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions," or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (cleaned up).

The Second Circuit has already found the Mandate facially neutral and generally applicable. *Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021). As the Circuit explained, the Mandate is neutral because it applies to "'all DOE staff,' as well as City employees and contractors of DOE and the City who work in DOE school settings." *Kane*, 19 F.4th at 164. It therefore "does not single out employees who decline vaccination on religious grounds." *Id.* The Circuit also held that the Mandate is generally applicable because it "applies to an entire *class* of people"—"DOE employees and other comparable employees." *Id.* at 166. The Circuit rejected the *Kane* plaintiffs' argument that the Mandate is not generally applicable because it exempts certain groups of people, like delivery workers and emergency responders. *Id.* at 160 n.5, 166; *see also We The Patriots USA*, 17 F.4th at 288 ("[A]n exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons."). "While the exempt groups do not come into prolonged daily contact with large groups of students (most of whom are unvaccinated), the covered groups (for

6

example, teachers) inevitably do," the Circuit found.  *Kane*, 19 F.4th at 166.

Faced with the binding implications of *Kane*, Bonilla argues that her complaint differs in an important way: it highlights that school bus drivers are not covered by the Mandate, despite (Bonilla alleges) coming "in close proximity with students on a daily basis within confined spaces."  Pl Mem., ECF 58, at 7.  Bonilla contends that the Second Circuit did not consider the bus-driver exemption because the *Kane* plaintiffs did not expressly mention it in their complaint.  *Id.* at 8.  However, the Mandate—and its exemption for bus drivers—was attached to the *Kane* complaint, and Bonilla offers no support for the argument that the Court did not intend its reasoning on "exempt groups" to apply to *all* exempted groups.  *Kane*, 19 F.4th at 166.  Bonilla merely rehashes an argument that the Second Circuit has already rejected.

*Kane*, therefore, squarely applies.  Because the Mandate is neutral and generally applicable, the government need only demonstrate a "rational basis" for its enforcement.  *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002).  Here, the "DOE clearly explained that 'a system of vaccination for individuals working in school settings, including DOE buildings and charter school buildings, will potentially save lives, protect public health, and promote public safety'"—a "rational, and indeed, compelling basis."  *Kane v. de Blasio*, 623 F. Supp. 3d 339, 357–58 (S.D.N.Y. 2022) (citation omitted); *see also* TAC ¶ 21; Ex. A.

Bonilla argues that the Mandate fails rational-basis review because "[t]he CDC, even prior to the implementation and enforcement of [the Mandate], had conceded that vaccination does not prevent infection and transmission of the virus."  Pl. Mem. at 11, ECF No. 58.  This is untrue.  The CDC guidance Bonilla cites "recommend[s] universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status."  *Id.* at 4 (citing Def. Ex. D at 5, ECF No. 50-4).  Nothing in this language suggests that vaccination is ineffective.  To the contrary, the CDC guidance unequivocally states that "[v]accination is the leading public health prevention

strategy to end the COVID-19 pandemic," Def. Ex. D, at 6, and recommends that "all teachers, staff, and eligible students be vaccinated as soon as possible," *id.* at 5.  The fact that the CDC recommends masking in addition to vaccination does nothing to undermine the rational basis for the Mandate.

 Bonilla's facial free-exercise claim is, therefore, DISMISSED.

### b.  As-Applied Challenge

Bonilla also contends that the Mandate is unconstitutional as applied to her, because the citywide panel that adjudicated her appeal "took the position that reference within a request for a religious exemption to fetal stem cells being in a COVID-19 vaccine(s) was not a sincerely held religious belief."  TAC ¶ 140; *see also id.* ¶¶ 70–78.  As evidence, she cites the citywide panel's request for further information from appellants who "stated that [they] cannot take the vaccine because of an objection to using derivative fetal cells in the development of a vaccine."  *Id.* ¶¶ 75–76. This inquiry, she argues, constitutes a non-neutral "individualized assessment[]" of Bonilla's religious beliefs, necessitating strict scrutiny.  *Id.* ¶¶ 141–42.

The Court is not persuaded.  "While a state is not entitled to evaluate the legitimacy of religious beliefs, courts have made clear that the state is permitted to assess whether a belief is sincerely held and religious in nature."  *Mora v. N.Y. State Unified Ct. Sys.*, No. 22 Civ. 10322, 2023 WL 6126486, at *11 (S.D.N.Y. Sept. 19, 2023) (citation omitted).  Here, the citywide panel's additional questioning falls on the permissible side of the line; the panel asked appellants to describe their use of other medication and vaccines to assess whether their fetal stem cell-based objections to vaccination were sincerely held, not whether they were objectively legitimate.  *See id.*; *see also Ferrelli v. N.Y. Unified Ct. Sys.*, No. 22 Civ. 68, 2022 WL 673863, at *8 (N.D.N.Y. Mar. 7, 2022) ("This line of questioning does not presuppose the illegitimacy of concerns about use of fetal cell lines; it merely seeks to determine whether such concerns are the applicant's true motivation for seeking an exemption.").

Further, the citywide panel denied Bonilla's appeal not because it determined her religious belief was not sincerely held, but because the DOE "demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning." TAC ¶ 79. This rationale aligns with the Circuit's requirement that the panel review appeals in accordance with, *inter alia*, Title VII of the Civil Rights Act of 1964. *Kane*, 19 F.4th at 162; *see Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (Title VII requires employers to offer religious accommodations "unless doing so would cause the employer to suffer an undue hardship."). Although Bonilla alleges that hostility toward her religious beliefs was the real reason for the denial, *see, e.g.*, TAC ¶ 141, these "bald assertions" are insufficient to state a claim. *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) (citation omitted); *see also Kane*, 623 F. Supp. 3d at 362 (rejecting as conclusory plaintiffs' allegation that the citywide panel "rubber-stamped" their denials).

In all, Bonilla has not pleaded sufficient facts to suggest that the citywide panel's review process, as applied to her, was not neutral or generally applicable. The Court concludes, therefore, that rational-basis analysis applies, and that the review process satisfies the standard. Bonilla's as-applied free-exercise claim is DISMISSED.

## 2. Equal Protection Clause (Count VIII)

Bonilla next alleges that the Mandate violates the Equal Protection Clause of the Fourteenth Amendment. TAC ¶¶ 232–266. She advances two theories: first, that the mandate had a "disparate impact o[n] countless people of faith," *id.* ¶ 245; and second, that she constitutes a "class of one" whose exemption request was denied while the requests of similarly situated DOE employees were granted, *id.* ¶ 253. Neither argument has merit.

First, Bonilla's disparate-impact argument amounts to a claim that the Mandate discriminates against religious people—a substantively similar argument to her First Amendment claim. "When a

free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." *Kane*, 19 F.4th at 168 n.14 (quotation omitted). Because Bonilla's free-exercise claim fails under rational-basis analysis, her equal-protection claim alleging religious discrimination fares no better.

Second, Bonilla advances a "class-of-one" theory, arguing that the DOE treated her differently from similarly situated individuals without any rational basis. TAC ¶ 253; *see Clubside, Inc. v. Valentin*, 468 F.3d 144, 158–59 (2d Cir. 2006). Such a claim is squarely barred by *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), which held that "the class-of-one theory of equal protection does not apply in the public employment context." *Id.* at 598. The Supreme Court explained that the government has "significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large," including broad discretion "[t]o treat employees differently" from one another. *Id.* at 598, 605.

Bonilla argues that *Engquist* does not apply because the Mandate is a legislative action that "extends to non-employees of DOE." Pl. Mem. at 15; *see Engquist*, 553 U.S. at 598. As the district court in *Kane* noted, however, Bonilla—a former DOE employee—lacks standing to challenge aspects of the Mandate that apply to non-DOE employees. *Kane*, 623 F. Supp. 3d at 357 n.17. At least in its dealings with Bonilla, the DOE acted solely in its capacity as an employer, barring Bonilla's class-of-one claim.

Bonilla's equal-protection claim is, therefore, DISMISSED.

### B. Federal Separation-of-Powers Claim (Count IV)

In addition to her Section 1983 claims, Bonilla seeks a declaration that the Mandate violates the constitutional principle of separation of powers because the City not been "delegated specific authority to issue new vaccine mandates." TAC ¶ 198; *see id.* ¶¶ 191–203. This claim, too, is without merit. Bonilla's claim appears to be rooted in the nondelegation doctrine, which restricts

Congress's ability to delegate the legislative authority vested in it by Article I of the U.S. Constitution. *Mistretta v. United States*, 488 U.S. 361, 371 (1989). Here, there is no delegation of congressional authority: the City acted under the New York City Charter, enacted by the New York state legislature. Ex. A. Federal separation-of-powers principles have no application to this case. *See Ellentuck v. Klein*, 570 F.2d 414, 428 (2d Cir. 1978) ("The concept of the separation of governmental powers, which underlies any claim of improper delegation, rises to a federal issue only as to the federal government.").

Accordingly, the federal separation-of-powers claim is DISMISSED.

### C.  State and Local Law Claims (Counts II–VII, IX–XI)

Having dismissed Bonilla's federal claims, the Court declines to exercise supplemental jurisdiction over Bonilla's claims arising under the New York state constitution and various provisions of state and local law. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Oneida Indian Nation v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." (cleaned up)). Accordingly, Bonilla's non-federal claims are DISMISSED without prejudice to renewal in state court.

### CONCLUSION

For the reasons stated above, the motion to dismiss is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 48 and close the case.

SO ORDERED.

Dated: December 4, 2023
      New York, New York

_____
ANALISA TORRES
United States District Judge